IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PRAGMATUS TELECOM, LLC,

        Plaintiff.

v.

GENESYS TELECOMMUNICATIONS
LABORATORIES, INC., ET. AL.

        Defendants.

C.A. No. 14-cv-26-RGA

Memorandum Opinion

Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE; Marc C. Belloli, Esq., Feinberg Day Alberti & Thompson, Menlo Park, CA (argued); David L. Alberti, Esq., Feinberg Day Alberti & Thompson, Menlo Park, CA; M. Elizabeth Day, Esq., Feinberg Day Alberti & Thompson, Menlo Park, CA; attorneys for the Plaintiff.

Michael J. Flynn, Esq., Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Karen Jacobs, Esq., Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Vera M. Elson, Esq., Wilson Sonsini Goodrich & Rosati, Palo Alto, CA (argued); Sara L. Rose, Esq., Wilson Sonsini Goodrich & Rosati, Palo Alto, CA; Trevor Carter, Esq., Faegre Baker & Daniels, Indianapolis, IN; Jeffrey L. Moyer, Esq., Richards, Layton & Finger, Wilmington, DE; Art Hasan, Esq., Christian Parker & Hale, Glendale, CA; Evan W. Krick, Esq., Ballard Spahr LLP, Wilmington DE; John J. Cuddihy, Esq., Ballard Spahr LLP, Washington, DC; attorneys for the Defendants.

July 9, 2015

*[signature]*

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before this Court is Defendants' Motion to Dismiss the Amended Complaints for failing to claim patent-eligible subject matter. (D.I. 55). The Motion has been fully briefed. (D.I. 58, 60, 72).[1] The Court has heard oral argument on this matter. (D.I. 81). The Court also requested that Plaintiff provide any proposed claim constructions it would like the Court to use for this motion to dismiss (D.I. 79), which Plaintiff has provided. (D.I. 80). At the oral argument, the Court also requested that the parties provide letters related to background information regarding the "history of call centers" as it relates to the matter at issue, which both parties submitted. (D.I. 82, 83).

**I. Background**

Plaintiff has asserted that Defendants infringe four patents, U.S. Patent Nos. 8,438,314 ("the '314 patent"), 6,311,231 ("the '231 patent"), 6,668,286 ("the '286 patent"), and 7,159,043 ("the '043 patent"). (D.I. 58 at 7). All four patents are continuations of U.S. Patent No. 5,884,032 and have a common specification. (D.I. 58 at 7).

In its briefing, Defendants only address the eight asserted claims of the '314 patent as "representative claims," arguing that none of the asserted claims in the three other patents "include any meaningful limitation" that allows for patent eligibility. (D.I. 58 at 8). Plaintiff disputes what it calls this "one-sentence attempt to boot strap the other three patents-in-suit," arguing that the claimed inventions are very different and cannot be merely lumped together without additional analysis. (D.I. 60 at p. 2).

---

[1] After filing their opening brief (D.I. 56), Defendants filed a corrected opening brief (D.I. 58) in support of their motion. The Court will therefore rely on the corrected opening brief, not the original one.

2

The '314 patent generally relates to controlling communication between customers and organizations using certain computer systems. ('314 Patent, Abstract). More specifically, the technology relates to connecting customers to live agents using call centers among other systems. (*See* '314 Patent at 1:25-2:4). In the Background of the Invention, the Patent identifies two disadvantages to current systems that integrate call center and Internet technologies: first, the customer must physically record and dial an 800 number, and second, the long waits disincentivize customers from making calls. ('314 Patent at 1:25-57). The specification reads: "The invention provides a method of quickly enabling the changing of customer contact channels under control of the calling customer. A customer contact channel is a specific means of communication between the customer and a sales/service provider." ('314 Patent at 2:10-14). According to Defendants, the claims at issue "merely re-apply the admittedly existing marketing technique of providing an 800 number on a web page so a customer can call for assistance from a call center, to the concept of allowing a customer to select some unspecified thing on a web page to do the very same thing." (D.I. 58 at 12). Plaintiff meanwhile argues that the patent helped connect companies to customers over different channels such as the Internet: "The patent is directed at overcoming two problems[:] (1) having to necessarily use physical telephones, which is a disincentive to contacting the company; and (2) the long waiting time associated with such calls." (D.I. 60 at pp. 6-7).

Plaintiff has asserted claims 1 through 7 and 10 of the '314 patent. (D.I. 58 at 2). Claims 1 and 5 are independent claims. Claims 2, 3 and 4 are dependent on claim 1, and claims 6, 7 and 10 are dependent on claim 5.

Independent claim 1 of the '314 patent recites:

An automated call distribution system comprising a server and a call center, the server providing network service to a customer terminal, with the server being operable to

3

receive data provided by the customer upon selection of a remote help option provided from one or more pages downloadable to the customer terminal where the data provided to the server includes a contact channel through which the user of the customer terminal can be reached and an Internet Protocol (IP) address;

the server being operable to receive the data and forward the data, including the contact channel and IP address, to the call center;

the call center being operable to receive the data from the server and automatically establish communication between the call center and the user of the customer terminal through the contact channel specified in the received data and wherein the established communication is based at least in part on the IP address within the received data.

('314 Patent, Claim 1).

Dependent claim 2 reads:

The automated communication distribution system according to claim 1 wherein the communication other is (sic) than a voice communication.

('314 Patent, Claim 2).

Dependent claim 3 reads:

The automated communication distribution system according to claim 1 wherein the communication includes text.

('314 Patent, Claim 3).

Dependent claim 4 reads:

The automated communication distribution system according to claim 1 wherein the established communication between the call centre and the user of the customer terminal is performed in real-time.

('314 Patent, Claim 4).

Independent claim 5 recites:

An automated communication distribution system comprising:

a call center terminal comprising a user interface;

a first server adapted to provide one or more pages downloadable to a customer terminal wherein at least one of the one or more downloadable pages includes a remote help option for requesting live help from the call center terminal; and

a second server adapted to

> (1) provide interaction over a network between the customer terminal and the call center terminal;
>
> (2) establish communication between the customer terminal and the call center terminal to provide live help to the customer terminal in response to the customer's selection of the remote help option; and
>
> (3) pass data from the call center terminal to the customer terminal in response to the customer's selection of the remote help option;

wherein the customer terminal has an associated Internet Protocol (IP) address and the second server establishes communication between the customer terminal and the call centre terminal at least in part based through the IP address.

('314 Patent, Claim 5).

> Dependent claim 6 reads:
>
> The automated communication distribution system according to claim 5 wherein the communication is other than a voice communication.

('314 Patent, Claim 6).

> Dependent claim 7 reads:
>
> The automated communication distribution system according to claim 5 wherein the communication includes text.

('314 Patent, Claim 7).

> Dependent claim 10 reads:
>
> The automated communication distribution system according to claim 5 wherein the communications between the customer terminal and the call centre terminal and the data passed from the call centre terminal to the customer terminal are carried over the Internet.

('314 Patent, Claim 10).

## II. LEGAL STANDARD

### A. Patentable Subject Matter

5

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include

6

'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357 (internal quotation marks omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610 (2010) (internal quotation marks omitted)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014). A patent can be eligible when it claims a solution to a problem necessarily rooted in computer technology, not merely a recitation of a business practice known from the pre-Internet world. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-1259 (Fed. Cir. 2014) ("In short, the claimed solution amounts to an inventive concept for resolving this particular Internet-centric problem, rendering the claims patent-eligible.").

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law" and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law . . . ." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007).

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

**B. Motion to Dismiss**

7

The Federal Circuit recently affirmed a motion to dismiss at the pleading stage because a patent failed to claim eligible subject matter under §101. *See OIP Technologies, Inc. v. Amazon.com, Inc.*, 2015 WL 3622181 (Fed. Cir. June 11, 2015). There, the Federal Circuit explained that it follows regional circuit law for motions to dismiss, and that patent eligibility under §101 is an issue of law reviewed *de novo*. *Id.* at *2. When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must accept the Complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

## III. DISCUSSION

### A. Procedural Posture

At the outset, Plaintiff argues that it is "especially difficult" to find a patent ineligible at the pleading stage, though acknowledges it is "not impossible." (D.I. 60 at p. 3). It seems clear that it can be proper for this Court to determine that a patent failed to claim patent-eligible subject matter at the motion to dismiss stage. *See, e.g., OIP Technologies, Inc. v. Amazon.com, Inc.*, 2015 WL 3622181 (Fed. Cir. June 11, 2015). Plaintiff also argues that this Court cannot look outside the pleadings to extrinsic evidence for other evidentiary support. (D.I. 60 at p. 3). As a general proposition, the Court agrees that it cannot look to evidence outside the pleadings at the motion to dismiss stage.[2] But it is proper in this case for the Court to resolve the §101 issue at the motion to dismiss stage. At this motion to dismiss stage, it is appropriate for the Court to take the proposed claim constructions in favor of the non-moving party, Plaintiff.

---

[2] Plaintiff revives this argument in response to Defendants' letter about the "history of call centers," arguing in part that the submitted evidence was not vetted in discovery and cannot be allowed in a motion to dismiss. (D.I. 83 at 1). The Court relies on Defendants' letter (D.I. 82) only for the point that call centers existed, at the very least, in the early 1980s, a point which Plaintiff concedes. (D.I. 83 at 2).

8

It is, however, inappropriate to invalidate all four patents under §101—the '314 patent, as well as the '231 patent, the '286 patent, and the '043 patent—merely because Defendants say that the eight claims of the '314 patent are representative of the other claims in the other patents. (D.I. 58 at 8). It is true that this Court may consider representative claims from other asserted patents if they are substantially similar and recite the same abstract idea. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Even so, Defendants have not demonstrated that the eight claims of the '314 patent are representative of the other three patents—even if they all share a common specification. All Defendants have done is stated, in a conclusory fashion, that none of the other asserted claims in the other three patents include "any meaningful limitation" that establishes patent eligibility. (D.I. 58 at 8). This is not enough. Absent additional analysis, the Court will only deal with the patent eligibility of the claims of the '314 Patent. If Defendants wish to challenge the other patents under §101, they must actually provide analysis for this position.

Therefore, at this time, the Court concludes that Defendants have not shown that the '314 patent claims are representative of the asserted claims in the other patents.

**B. Patentable Subject Matter**

**1. Independent Claim 1**

**a. Abstract Idea**

Under the *Alice* framework, the Court must begin by determining whether the patent is directed to a patent-eligible concept. *Alice*, 134 S. Ct. at 2355. Independent claim 1 recites an "automated call distribution system"[3] connecting a customer to a call center, via a server and

---

[3] Plaintiff calls this a "[s]ystem that automatically distributes incoming calls to available agents" in its proposed claim constructions. (D.I. 80 at 2).

9

using a customer terminal. ('314 Patent, Claim 1). At its essence, the claim is directed to the abstract idea of communication between a customer and a business using a call center, automated and obfuscated along the way using certain computer, telephonic and network services. This invention might be faster, automated, and more streamlined using web pages, but the idea at its core is connecting customers to call centers. Call centers, where customers call in to speak with live agents,[4] are not new. Nor did the patent claim they were. Call centers have existed for decades in the modern world, at the very least since the early 1980s. Plaintiff challenges Defendants' claim that the patent is directed to an abstract idea, pointing out that the patent uses a technological specific solution to facilitate customer contact. (D.I. 60 at p. 7). According to Plaintiff, this is a "technical solution to a technical problem" (D.I. 60 at p. 8), which is a "specific automated call distribution system" that supports "numerous different channels for customer-agent interaction." (D.I. 60 at p. 9). Plaintiff repeats statements like this: "It requires a particular, physical structure." (D.I. 60 at p. 10). Even if Plaintiff were correct that the invention provides a compelling technological solution to the aforementioned problems, the patent is fundamentally directed to the abstract idea of connecting customers to call centers. Whether or not the specifics of the technology transform the abstract idea such that it is an inventive concept is a question for the second step of the *Alice* framework. *See Ultramercial*, 772 F.3d at 715. ("We do not agree ... that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete. In any event, any novelty in

---

[4] Plaintiff offers in its proposed claim constructions that call center means "[o]ne or more computer systems connecting live agents to customers through one or more communication channels." (D.I. 80 at 2). Even if this use of "call center" requires computer systems and one or more communication channels, at its essence it is still a system of connecting customers to live agents.

10

implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis.").

The specification demonstrates that the claims are directed to the abstract idea of connecting customers to call centers. The patent identifies two problems with call center systems: customers must physically record and dial an 800 number, and they often have long waits. ('314 Patent at 1:25-57). These are precisely the type of pre-Internet problems that exist with the generic idea of connecting customers to call centers. In terms of resolving these issues, the specification seems merely to describe a faster way of doing this: "It is another object of the invention to make this process faster and simpler so as to improve the likelihood of a successful connection to a live agent. The invention provides a method of quickly enabling the changing of customer contact channels under control of the calling customer. A customer contact channel is a specific means of communication between the customer and a sales/service provider." ('314 Patent at 2:7-14). Whether the novelty of this implementation using customer contact channels is sufficient to overcome the abstract idea at its core is a question for step two of the *Alice* analysis. *See Ultramercial*, 772 F.3d at 715. At the very least, though, the fact that the invention improves the success rate of connecting a customer to a live agent demonstrates that the invention is directed to the abstract idea of connecting customers to call centers.

### b. Inventive Concept

Even if the claims are directed to the abstract idea of connecting customers to call centers, the second step of the *Alice* framework requires determining whether the elements individually, or as an ordered combination, constitute an inventive concept. *Alice*, 134 S. Ct. at 2355.

A simplification of claim 1, whose full text is above, helps illustrate the key elements of the claims. When the claim is summarized and stripped of its conventional technological elements—"automated call distribution system," "network service," "terminal," "data," "remote," "one or more pages downloadable," "Internet Protocol (IP) address"—it is apparent not only that it covers an abstract idea but that it does not claim an inventive concept. Claim 1 could be summarized to read as follows. A system comprising a server and a call center, the server receiving information from the customer upon selection of a help option from information on a second server, including a contact channel. The server can receive and forward information to the call center. The call center can communicate with the user through the specified contact channel. (*See* '314 Patent, Claim 1).

Read this summarized way, claim 1 merely recites a system for connecting a customer to a call center, using two servers to pass along certain information related to the call or process. The generic technological elements of the claim such as "automated call distribution system," "network service," "terminal," "data," "remote," "one or more pages downloadable," "Internet Protocol (IP) address," individually, or collectively do not transform the abstract idea into something more. *See Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2350 ("Neither stating an abstract idea while adding the words 'apply it,' nor limiting the use of an abstract idea 'to a particular technological environment,' is enough for patent eligibility.") (citations omitted) (internal quotation marks omitted).

It is not apparent how this claimed invention is sufficiently transformed from a customer contacting a call center agent, selecting certain options to be routed appropriately, with relevant information passing between both parties through the system. An illustration may be helpful. Charlie Customer calls a help line. He is prompted by a recording to enter his telephone number

to identify himself (data or IP address). He is prompted to dial certain numbers (help option) to be transferred to the billing department of the company (specified contact channels), or he can be transferred to an operator or leave a voice mail (specified contact channels). His telephone number (data or IP Address) and selections are passed to and from the call center agents (receive and forward the data).[5] To allow such a claim would preempt the fundamental concept of customers communicating with businesses, and more specifically customers communicating with call center agents.

Plaintiff argues that the patent manipulated interactions with electronic communications over a computer network "to yield a new and useful end—one that overrides the routine and conventional way in which call centers operated." (D.I. 60 at p.18). According to Plaintiff this means that rather than using a web page to display a phone number, a user can "directly and automatically" open a communication channel with customer service. (D.I. 60 at pp. 18-19). Using a web page to directly and automatically initiate a phone call, rather than communicating with customer service in person or via a phone, is merely taking a patent-ineligible idea and saying "apply it" on a computer or with servers. *See Alice Corp.*, 134 S. Ct. at 2358 ("....the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea "while adding the words 'apply it' " is not enough for patent eligibility.")

Plaintiff analogizes its claims to those in a recent Federal Circuit case, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), but Plaintiff has not demonstrated how

---

[5] This is merely one example, but there are many more. A less generous reading of the claim might analogize it to a dispatcher connecting phone calls from a switch board, an administrator routing letters in a mail room, or other means of organizing and controlling flows of communication.

its claims are rooted specifically in a problem for computer technology, rather than the abstract concept of communicating with call centers. (D.I. 60 at pp. 14-16; *DDR Holdings*, 773 F.3d at 1257 ("But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.")). Faster, simpler, automatic or more successful connections of customers to live agents do not save the claims from being directed to the abstract idea of connecting customers to calls centers. *See, e.g., Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (2012) ("To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.").

In sum, independent claim 1 does not recite patentable subject matter because it is directed to the abstract idea of connecting customers to call centers, and the claim does not contain an inventive concept to transform the abstract idea to patent-eligible subject matter.

### 2. Dependent Claims 2, 3, 4

The analysis for dependent claims 2, 3, and 4 (mentioned above) is identical to that of independent claim 1. These three additional dependent claims add limitations to claim 1's "automated communication distribution system" where the communication is voice communication, includes text, or is performed in real-time. ('314 Patent, Claims 2-4). None of these three additional limitations changes the analysis related to the abstract idea and the failure to include an appropriate transformation—even if they implicate voice, text or are performed in real-time. Importing requirements into claim 1's system to use voice or text communication, or

14

be done in real-time, does not make this abstract idea patentable. Voice communication, done in real-time, is par for the course with a traditional call center. Text communication does not transform this abstract idea of connecting customers to call centers. Allowing such claims would preempt a fundamental business practice. The dependent claims do not alter the fact that the claims are for "call centers using computers." Without more, there is not an inventive concept to ensure that this is significantly more than the mere abstract idea. Therefore these claims are also invalid under 35 U.S.C. § 101.

### 3. Independent Claim 5

#### a. Abstract Idea

The Court's analysis under the *Alice* framework is similar to that for independent claim 1, especially because the specification demonstrates that the claimed technology is directed to the abstract idea of connecting customers to call centers. The arguments on the abstract idea issue for claim 5 are essentially the same as for claim 1 and the patent generally. The Court, therefore, will not repeat itself. Under the first step of the *Alice* framework, the Court determines that this claim is also directed to an abstract idea. *See Alice*, 134 S. Ct. at 2355.

#### b. Inventive Concept

As with claim 1, the second step of *Alice* requires determining whether the elements individually, or as an ordered combination, constitute an inventive concept. *Id.*

A simplification of claim 5, whose full text is previously quoted, put into ordinary English, illustrates the key elements of the claim:

> A call center system including:
>     a computer at the call center;
>     a server in communication with the computer at the call center;
>     a second server that can communicate
>         between the call center and a customer's computer about the customer's
>         need for customer service;

15

wherein the second server uses the customer's IP address in making the connection.[6] (*See* '314 Patent, Claim 5).

These generic computer and technological components—"automated communication distribution system," "terminal," "user interface," "one or more pages downloadable," "over a network," "data"—do not individually or together transform this abstract idea into something sufficient for patentability. *See Alice Corp.*, 134 S. Ct. at 2350. As with claim 1, claim 5 does not transform the abstract idea of connecting a customer to a call center. This patent claim is merely a customer calling an agent, selecting an option, with information transferred between the customer and live agent. That is how call centers, which have existed for decades, have long worked. The addition of the terminals on both sides, and the first and second server, merely take this long-standing concept, introduce computers and say, "Apply it. To allow such a claim would preempt fundamental types of communication that exist between customers and businesses every single day.

As with claim 1, a routine customer call to a call center illustrates how generic and abstract this claim is. A customer dials into a help line, receives numbered options, selecting the appropriate department (remote help option). The system that offers the customer numeric options (interaction between the customer and call center) connects her to the live help that she selected (establishes communication between the customer and call center to provide live help in response to the customer's selection). Certain information such as the customer's account number or telephone number is passed to the call center, which is also used to route the call to the agent who deals with the appropriate accounts. As with claim 1, merely providing account information to a call center cannot be enough to transform a long-standing abstract idea to

---

[6] I think this is a fair summary of claim 5. Of course the full claim, cited before, governs.

16

something that is sufficient for patentability. Nothing makes this claim sufficiently transformed beyond merely reciting generic computer or network components. *See Alice Corp.*, 134 S. Ct. at 2358. Unlike *DDR Holdings*, this claim is a pre-Internet business practice and not specifically a problem in the realm of computer networks. 773 F.3d at 1257.

In sum, claim 5 is directed to an unpatentable abstract idea, and it has not been sufficiently transformed to save it. It is invalid under 35 U.S.C § 101.

### 4. Dependent Claims 6, 7, 10

As with the previous analysis, these three dependent claims must also fail for claiming unpatentable subject matter because they are directed to an abstract idea and are not sufficiently transformed. Dependent claim 6 uses claim 1's system with voice communication, dependent claim 7 uses the system with communication that includes text, and dependent claim 10 uses the Internet to pass the data between the call center and customer terminals. ('314 Patent, Claim 6, 7, 10). The limitations of voice, text and the internet do not sufficiently transform the abstract idea of a customer communicating with a call center agent. These dependent claims get at the core of what *Alice* sought to prevent, that an abstract idea cannot be captured with artful draftsmanship or the words, "Apply it." *See Alice Corp*, 134 S. Ct. at 2357. To allow these claims would do just that. Placing an abstract idea on the Internet, using voice or text, does not save the idea from being abstract. These dependent claims are invalid under 35 § U.S.C. 101 because they claim ineligible subject matter.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss is granted in part. An order will follow.

17